## GLADSON *v.* MINNESOTA.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 240. Argued March 26, 1897. — Decided April 12, 1897.

A statute of a State, requiring every railroad corporation to stop all regular passenger trains, running wholly within the State, at its stations at all county seats long enough to take on and discharge passengers with safety, is a reasonable exercise of the police power of the State, and does not take property of the company without due process of law; nor does it, as applied to a train connecting with a train of the same company running into another State, and carrying some interstate passengers and the United States mail, unconstitutionally interfere with interstate commerce, or with the transportation of the mails of the United States.

THE case is stated in the opinion.

*Mr. Emerson Hadley* for plaintiff in error. *Mr. James D. Armstrong* was on his brief.

*Mr. H. W. Childs,* Attorney General of the State of Minnesota, for defendant in error. *Mr. George B. Edgerton* was on his brief.

MR. JUSTICE GRAY delivered the opinion of the court.

This was a complaint to a justice of the peace of the county of Pine and State of Minnesota, by a passenger on a regular passenger train of the St. Paul and Duluth Railroad Company, running between the cities of St. Paul and Duluth in the State,

and not being "a train entering this State from another State, or going from this State to another State, or a transcontinental train," against the engineer of the train, for not stopping it on July 22, 1893, at the station in the village of Pine City, the county seat of Pine county, as required by the statute of Minnesota of March 31, 1893, c. 60, by which it was enacted as follows:

"All regular passenger trains, run by any common carrier operating a railway in this State, or by any receiver, agent, lessee or trustee of said common carrier, shall stop a sufficient length of time at its stations at all county seats within this State to take on and discharge passengers from such trains with safety; and any engineer, conductor or other agent, servant or employé of, or any person acting for such common carrier, or for any receiver, agent, lessee or trustee of such common carrier, who violates any provision of this act, is guilty of a misdemeanor, and is punishable by a fine of not less than twenty-five dollars nor more than one hundred dollars, or by imprisonment in the county jail for not less than ten days nor more than three months: Provided, however, that this act shall not apply to through railroad trains entering this State from any other State, or to transcontinental trains of any railroad." Minnesota Laws of 1893, p. 173.

The defendant was convicted before the justice of the peace, and appealed to the district court for the county. Upon the trial in that court, the case appeared to be as follows:

The St. Paul and Duluth Railroad Company was a corporation of the State of Minnesota; and had become vested, under the laws of the State, with the lands received by the State under the act of Congress of May 5, 1864, c. 79, "making a grant of lands to the State of Minnesota to aid in the construction of the railroad from St. Paul to Lake Superior," and providing that "the said railroad shall be and remain a public highway for the use of the government of the United States, free from all toll or other charge, for the transportation of any property or troops of the United States"; that "the United States mail shall be transported over said road, under the direction of the Post Office Department," at prices to be fixed

by Congress or by the Postmaster General; and that "any railroad which may hereafter be constructed from any point on the Bay of Superior in the State of Wisconsin shall be permitted to connect with the said railroad." 13 Stat. 64, 65; Minnesota Special Laws of 1865, c. 2, p. 19; *State* v. *Luther*, 56 Minnesota, 156.

On the afternoon of July 2, 1893, the complainant was a passenger on a train of the company running from St. Paul to Duluth, and held a ticket for a passage from Rush City to Pine City, both being stations on the line between St. Paul and Duluth, and Pine City being a village of eight hundred inhabitants and the county seat of Pine county; but, although he showed his ticket to the conductor, the train was not stopped at Pine City. The train was a fast express train, known as "the limited," carrying passengers and the United States mail, running daily from St. Paul to Duluth only, stopping for wood and water at Hinckley, and at railroad crossings and junctions at Rush City and elsewhere, but not scheduled to stop nor actually stopping at Pine City or other stations on the way. The mail, and about one third of the passengers, on the average, were destined for West Superior, and were transferred at West Duluth in the State of Minnesota to another train of the same company running thence to the city of West Superior in the State of Wisconsin, just across the line between the two States. To have stopped the train at Pine City would have caused a loss of time of from five to seven minutes, and an expense of from $1.25 to $1.60. Two passenger trains and a mixed train passed daily each way over the road from St. Paul to Duluth, stopping at Pine City.

The defendant, as stated in his bill of exceptions, "moved the court for his discharge, on the ground that the statute under which the complaint is made is unconstitutional on its face, not falling within the legitimate scope of the police power of the State, consequently being a taking of the property of this railroad company without due process of law; that, even if it is not unconstitutional on its face, it is unconstitutional as applied to the train in controversy: in the first place, being an attempt on the part of the State to regu-

late interstate commerce; and secondly, being an unlawful interference with and an attempt to regulate the United States mail."

The court denied the motion, and submitted the case to the jury, who returned a verdict of guilty, upon which judgment was rendered. The defendant appealed to the Supreme Court of the State, which affirmed the judgment. 57 Minnesota, 390. The defendant sued out this writ of error.

The principles of law which govern this case are familiar, and have been often affirmed by this court. A railroad corporation created by a State is for all purposes of local government a domestic corporation, and its railroad within the State is a matter of domestic concern. Even when its road connects, as most railroads do, with railroads in other States, the State which created the corporation may make all needful regulations of a police character for the government of the company while operating its road in that jurisdiction. It may prescribe the location and the plan of construction of the road, the rate of speed at which the trains shall run, and the places at which they shall stop, and may make any other reasonable regulations for their management, in order to secure the objects of the incorporation, and the safety, good order, convenience and comfort of the passengers and of the public. All such regulations are strictly within the police power of the State. They are not in themselves regulations of interstate commerce; and it is only when they operate as such in the circumstances of their application, and conflict with the express or presumed will of Congress exerted upon the same subject, that they can be required to give way to the paramount authority of the Constitution of the United States. *Stone* v. *Farmers' Loan & Trust Co.*, 116 U. S. 307, 333, 334; *Smith* v. *Alabama,* 124 U. S. 465, 481, 482; *Hennington* v. *Georgia,* 163 U. S. 299, 308, 317; *New York, New Haven & Hartford Railroad* v. *New York,* 165 U. S. 628, 632.

In Minnesota, as in other States, the county seat of each county is the place appointed for holding the meetings of the county commissioners and the sessions of the district court, and for keeping the offices of the clerk of that court, the

judge of probate, the county auditor, the county treasurer, the sheriff and the register of deeds. Minnesota Gen. Stat. 1878, c. 8, §§ 102, 129, 148, 174, 195, 220, 227, 258.

The legislature of the State may well treat it, as one important object of establishing a railroad within the State, that public officers, parties to actions, jurors, witnesses and citizens generally, should be enabled the more promptly to reach and leave the centres to which their duties or business may call them. To require every regular passenger train, running wholly within the limits of the State, to stop at all stations at county seats, directly in its course, for the few minutes, and at the trifling expense, needed to take on and discharge passengers with safety, is a reasonable exercise of the police power of the State, and cannot be considered a taking of property of the company without due process of law, nor an unconstitutional interference with interstate commerce or with the transportation of the mails of the United States.

The recent case of *Illinois Central Railroad* v. *Illinois*, 163 U. S. 142, cited by the plaintiff in error, was essentially different from the present case.

In that case, the statute of the State of Illinois, as construed and applied by the Supreme Court of the State, required a fast train, carrying interstate passengers and the United States mail from Chicago in the State of Illinois to places in other States south of the Ohio River, over an interstate highway established by authority of Congress, to delay the transportation of such passengers and mails, by turning aside from the direct interstate route, and running to a station three miles and a half away from a point on that route, and back again to the same point, and thus travelling seven miles which formed no part of its course, before proceeding on its way; and, as the court observed, the question whether a statute which merely required interstate railroad trains, without going out of their course, to stop at county seats, would be within the constitutional power of the State, was not presented, and could not be decided, upon the record in that case. 163 U. S. 153, 154.

But, in the case at bar, the train in question ran wholly

within the State of Minnesota, and could have stopped at the county seat of Pine county without deviating from its course; and the statute of Minnesota expressly provides that "this act shall not apply to through railroad trains entering this State from any other State, or to transcontinental trains of any railroad."

*Judgment affirmed.*

MR. JUSTICE BREWER did not hear the argument and took no part in the decision of this case.