298    UNITED STATES ex rel. ROMERO v. CORTELYOU.

Statement of the Case.                    [26 App.

---

# UNITED STATES EX REL. ROMERO v. CORTELYOU, POSTMASTER GENERAL.

---

### POSTOFFICES AT COUNTY SEATS; MANDAMUS.

1. Whether or not the municipal officers of a town can maintain an action of mandamus to compel the Postmaster General to re-establish a postoffice, it is clear that private citizens residing in the town can do so.

2. Under the act of Congress of June 9, 1896 (29 Stat. at L. 313, chap. 386), no postoffice established at any county seat may be abolished or discontinued by reason of any consolidation of postoffices; and, where such consolidation has taken place, such postoffice must be re-established regardless of any view the Postmaster General may entertain in respect of the public interests affected.

3. Where the Postmaster General has discontinued a postoffice without authority of law, mandamus is the proper remedy to compel him to re-establish it.

No. 1559.   Submitted November 10, 1905.   Decided December 5, 1905.

HEARING on an appeal by the petitioners from an order of the Supreme Court of the District of Columbia dismissing a petition for the writ of mandamus.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment dismissing a petition for mandamus filed against Henry C. Payne, as Postmaster General of the United States, by the mayor of, and by certain citizens residing in, the town of Las Vegas, New Mexico.

UNITED STATES ex rel. ROMERO v. CORTELYOU.     299

D. C.]                        Statement of the Case.

It appears from the allegations of the petition that Las Vegas is an incorporated town, is now, and had been for a long time prior to March 31, 1903, the county seat of San Miguel county, New Mexico; that, on and before March 31, 1903, there had been regularly established and maintained therein a United States postoffice; and that on said date the defendant had discontinued said postoffice, against the will of the inhabitants of said town, and, though requested, refuses to re-establish the same.

The answer of the Postmaster General substantially admits the foregoing facts, and justifies his action on the following grounds: He says that the town of Las Vegas and the city of East Las Vegas are adjoining communities, but separated by a river; that, prior to March 31, 1903, there was a postoffice in each place; that said city was larger and more populous than the town, and was entitled, under the law, to the free delivery of mail matter, while the town was not; that there had been great confusion in delivery of mails, through mistake in sending mails intended for the city to the town; that in the exercise of his official discretion, and looking to the efficiency of the service, he had discontinued the postoffice in said town, changed the name of the postoffice in East Las Vegas to Las Vegas, and extended the free delivery thereof to the town and the territory formerly served by the office therein; that for these reasons he has refused to re-establish the said postoffice, and that his action is not subject to review.

Upon the death of Henry C. Payne, his successor, Robert J. Wynne, was made a party, and upon his relinquishment of the office, the present Postmaster General, George B. Cortelyou, was made defendant.

*Mr. S. A. Putman* and *Mr. W. H. Robeson* for the appellants.

*Mr. D. W. Baker,* United States Attorney for the District of Columbia, and *Mr. Jesse C. Adkins* and *Mr. James M. Proctor,* Assistants, for the appellee.

300     UNITED STATES ex rel. ROMERO v. CORTELYOU.

Opinion of the Court.     [26 App.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. Whether the municipal officers of the town of Las Vegas can maintain this action on behalf of the town or its inhabitants, we need not stop to inquire. Certain of the plaintiffs are private citizens who reside in the said town, and are interested in the maintenance of the postoffice therein for their own and the general convenience. If it be the plain duty of the respondent to re-establish the office, then we think it clear, upon principle and authority, that they can maintain the action for the enforcement of that duty. High, Extr. Legal Rem. § 431; *Union P. R. Co.* v. *Hall,* 91 U. S. 343, 355, 23 L. ed. 428, 432.

2. It is unnecessary to recite the various statutes defining the powers of, and conferring general discretion upon, the Postmaster General in respect of the establishment, maintenance, and discontinuance of postoffices. It is sufficient to say that they confer general powers and broad discretion, which, if not expressly limited or taken away, as regards the locality in question, would amply justify the action complained of. The town of Las Vegas being a county seat at the time of the discontinuance of the postoffice, the question for determination is whether he was not expressly prohibited by the act of Congress passed June 9, 1896, from discontinuing the postoffice therein, and, if so, whether it is not made his plain duty to re-establish it.

The provision of the said act reads as follows: "Provided, that no postoffice established at any county seat shall be abolished or discontinued by reason of any consolidation of postoffices made by the Postmaster General under existing law, and any such postoffice at a county seat heretofore consolidated shall be established as a separate postoffice at such county seat: Provided, however, that this provision shall not apply to the city of Cambridge, Massachusetts, or to Towson, Maryland." 29 Stat. at L. 313, chap. 386, U. S. Comp. Stat. 1901, p. 2633.

The intention of Congress, plainly expressed in this provision, was to take from the Postmaster General the power to discontinue a postoffice at a county seat for the purpose of consolidation with another, regardless of any view that he might enter-

UNITED STATES ex rel. ROMERO v. CORTELYOU.      301

D. C.]                    Opinion of the Court.

tain in respect of the public interests affected.   The town of Las Vegas being a county seat at the time his action was taken, the discontinuance of the postoffice therein was in direct opposition to the law, and it is his duty to re-establish it.

3. Notwithstanding this view of the plain duty of the Postmaster General under the law, it is contended, on his behalf, that the writ of mandamus does not lie to undo an act which has already been completed.   This is doubtless true where there is another effective remedy at law, or in equity, to undo, or to repair, the effects of the wrongful action.   Without reviewing the decisions cited in support of the contention, we think that they go no farther than above indicated.   Some of them involved a review of judicial action; others present a case where a recanvass of votes in a corporate election was demanded, where the result had been declared and the officers who were not before the court had been installed in accordance therewith; in still another, it was sought to compel the abatement of a nuisance committed by public officers in the repair of a highway.   The facts of the case at bar distinguish it from those cases.   The Postmaster General is provided with the means to re-establish the postoffice at the county seat, and it is made his plain duty to do so.   This duty is a continuing one, and there is no other judicial remedy for its enforcement.   Any injury that may have resulted from the discontinuance of the postoffice cannot be compensated in this action, but he may be compelled to bring it to an end by re-establishment, which is all that is asked.

The case is analogous to that where a railway company, required by law to maintain a station, or to stop its trains, at a designated place, and, having obeyed the law for a time, has discontinued the practice.   In such case, the power to compel resumption seems well established.   *People ex rel. Walker* v. *Louisville & N. R. Co.* 120 Ill. 48, 10 N. E. 657; *Union P. R. Co.* v. *Hall*, 91 U. S. 343, 353, 23 L. ed. 428, 431; *Illinois C. R. Co.* v. *Illinois*, 163 U. S. 142, 153, 41 L. ed. 107, 111, 16 Sup. Ct. Rep. 1096.

For the reasons given, the judgment will be reversed, with

costs, and the cause remanded, with direction to render a judgment granting the prayer of the petition.          *Reversed.*

A writ of error to the Supreme Court of the United States was allowed January 2, 1906.