MISSOURI, K. & T. RY. CO. OF TEXAS v. STATE. (No. 5159.)

(Court of Civil Appeals of Texas. Austin. April 9, 1913. On Motion for Rehearing, May 13, 1914. Rehearing Denied June 10, 1914.)

On Rehearing.

1. COMMERCE (§ 27*)—REGULATION — INTRASTATE COMMERCE.

Under Const. art. 10, § 1, empowering a railroad corporation to construct and operate a railroad within the state, and to connect at the state line with railroads of other states, a passenger train operated by a Texas railroad company under a contract with a foreign company, from whom it received the train at the state line and then hauled it to other points within the state, was an instrument of intrastate and not interstate commerce, since the Texas company had no powers outside of the state, and the company was liable, under Railroad Commission Circular 18, for failure to start said train from its point of origin at the time scheduled; the point of origin being the point where the train was received from the connecting company.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

2. CARRIERS (§ 18*)—REGULATION—ENFORCEMENT OF ORDERS OF COMMISSION — COURT ACTION—CONDITION PRECEDENT.

Railroad Commission Circular 18, requiring railroads to start passenger trains from their points of origin on schedule time, is a general order applying to all roads in the state, and can be enforced by the courts, without the road having first been cited by the commission to show cause why it did not comply with the order, notwithstanding that the order was passed in 1907, and the alleged violations occurred in 1908.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 13, 16–18, 20, 24; Dec. Dig. § 18.*]

---

3. CARRIERS (§ 20*)—REGULATION—ENFORCEMENT OF ORDERS—PENALTIES—SEPARATE OFFENSES.

Under Rev. St. 1911, art. 6672, providing that for every act of violation of the orders of the Railroad Commission the railroad shall pay a penalty to the state, each failure of a railroad to start its trains from their points of origin on schedule time, as required by Railroad Commission Circular 18, is a separate offense, and subjects the railroad to liability for the penalty.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49, 133, 927; Dec. Dig. § 20.*]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by the State of Texas against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed on rehearing.

A. S. Coke and A. H. McKnight, both of Dallas, and Fiset & McClendon, of Austin, for appellant. B. F. Looney, Atty. Gen., and Luther Nickels, Asst. Atty. Gen., for the State.

RICE, J. As appellant's statement of the nature and result of the suit is concurred in by appellee, the same will be adopted, and is as follows: This suit was instituted by the state of Texas against appellant to recover penalties aggregating $400,000, on account of 80 alleged violations of passenger circular No. 18, issued by the Railroad Commission of Texas, relating to the running of passenger trains on schedule time, commonly called "the thirty-minute order"; said violations occurring between September 8, 1910, and November 8, 1910. A trial before the court resulted in a judgment against appellant for $14,000, from which this appeal is prosecuted.

Said circular 18 reads as follows:

"Each and every railroad company operating a railroad in this state shall start its passenger trains from the points of origin in accordance with advertised schedule, and said trains, except from unavoidable accidents thereto en route, shall observe and conform to the published schedule as to arrival and departure at the several stations on the line: Provided, that trains may be held not to exceed thirty (30) minutes at origin or at junction points with other lines to make connection with trains on such other lines. If, at the expiration of said thirty minutes, connecting trains are in sight, ten minutes, in addition to said thirty minutes, will be allowed in which to make the connection. Where connecting trains arrive within the time above allowed, a reasonable time, in addition to that provided for, will be allowed for transfer of passengers, mail, express, and baggage. Where connections are reliably reported to be more than thirty minutes late, no wait will be made."

Article 6552, Revised Statutes of 1911 (article 4494, R. S. 1895), upon which said order is predicated, reads:

"Every such corporation shall start and run their cars for the transportation of passengers and property at regular times to be fixed by public notice, and shall furnish sufficient accommodations for the transportation of all such passengers and property as shall, with a reasonable time previous thereto, offer or be offered for transportation at the place of starting and at junctions of other roads and at sidings and stopping places established for receiving and discharging way passengers and freights, and shall take, transport and discharge such passengers and property at, from and to such places, on the due payment of the tolls, freight or fare legally authorized therefor. Failure on the part of the railroad companies to comply with the requirements of this article shall be deemed an abuse of their rights and privileges and subject to regulation and correction by the Railroad Commission."

Article 6672, R. S. 1911, provides that:

"If any railroad company doing business in this state shall hereafter violate any other provision of this chapter, or shall do any other act herein prohibited, or shall fail or refuse to perform any other duty enjoined upon it for which a penalty has not been provided by law, or shall fail, neglect or refuse to obey any lawful requirement, order, judgment or decree made by the Railroad Commission of Texas, for every such act of violation it shall pay to the state of Texas a penalty of not more than five thousand dollars."

Appellee charged that it was appellant's duty to operate its passenger trains Nos. 9 and 209, commonly called the "Katy Limited," in accordance with said circular, and that upon 80 different occasions, specifically set out, it had failed to do so, praying for penalty against it in the sum of $5,000 for each alleged violation.

Replying, appellant urged a general demurrer; likewise admitted certain facts alleged, and a general denial of others, and pleaded specially that the circular of said Railroad Commission did not apply to it by reason of the fact that it was engaged in interstate commerce, carrying passengers and freight between points in said state and points in Oklahoma, Kansas, Missouri, and other states of the United States and foreign countries, and that as such common carrier was subject to and controlled by the Interstate Commerce Act of February 4, 1887, and amendments thereto, that trains Nos. 9 and 209 are composed of trains made up in St. Louis and Kansas City, Mo., and operated by the Missouri, Kansas & Texas Railway Company to Parsons, Kan., where they were consolidated and operated as one train to Denison, Tex., from which point it was, without change except of engines and crews, operated by defendant under contract with the last-named railroad company as trains Nos. 9 and 209, via Dallas and Ft. Worth to Hillsboro, and thence as one train to Granger, where it separated, one branch going to Galveston, and the other to San Antonio. A corresponding north-bound train, also popularly called the "Katy Limited," and designated by defendant and said railway company as train No. 10, except the part thereof operated between Hillsboro and Denison, via Ft. Worth, which is called train No. 210, has also since said date been daily operated by them to points outside of Texas on the line of the Missouri, Kansas & Texas Railway.

It was likewise alleged and shown that appellant furnished ample accommodation for

intrastate traffic independent of said trains Nos. 9 and 209 on and over its line south of Denison, and that, while said trains 9 and 209 stopped and took on and discharged passengers at various points along its line from Denison south, still that about 70 per cent. of the passenger traffic was interstate; that they also published and advertised said trains as being through trains, affording continuous passage from St. Louis and Kansas City to San Antonio and other points in Texas, and as such being engaged in interstate commerce. The material facts of said plea were sustained by the record.

It is contended on the part of appellant that circular No. 18 is not applicable to trains Nos. 9 and 209, for the reason that the same would be a regulation of, a burden upon, and an interference with interstate commerce. It clearly appears that the trains involved in this case were operated between St. Louis and Kansas City, Mo., and San Antonio, Tex., under an agreement between appellant and the Missouri, Kansas & Texas Railway Company, whose lines connected at Red river, five miles north of Denison. These trains were intended to and did accommodate interstate traffic, and, under the agreement and contract between appellant and the Missouri, Kansas & Texas Railway Company, the latter was obligated to deliver the south-bound trains to appellant at Red river, and appellant was obligated to handle them through to destination; and appellant was obligated to deliver the north-bound trains to said company at Red river, and the other was bound to handle them through to St. Louis and Kansas City.

By its proposition under its several assignments appellant insists that a through passenger train, operated by two railway companies under an agreement, between points in different states, is an instrumentality and facility of carriage within the meaning of the act to regulate commerce, the jurisdiction to regulate and control which lies with the Interstate Commerce Commission, and not with the Railroad Commission of Texas. We agree with this contention, and hold that, since it clearly appears from the record that the trains involved in this contention were engaged in interstate commerce at the times in question, the order of the commission was not applicable to them, and sustain appellant's several assignments raising this question. See Interstate Commerce Act, §§ 1 and 15, as amended (Act Feb. 4, 1887, c. 104, 24 Stat. 379, 384 [U. S. Comp. St. 1901, pp. 3154, 3165], as amended by Act June 29, 1906, c. 3591, §§ 1, 4, 34 Stat. 584, 589 [U. S. Comp. St. Supp. 1911, pp. 1284, 1297]) ; 1 Drinker; Southern Railway Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72; B. & O. R. R. Co. v. Interstate Commerce Commission, 221 U. S. 612, 31 Sup. Ct. 621, 55 L. Ed. 878; Southern Railway Co. v. Reid, 222 U. S. 424, 32 Sup. Ct. 140, 56 L. Ed. 257; Southern Railway Company v. Reed & Beam,

222 U. S. 444, 32 Sup. Ct. 145, 56 L. Ed. 263; 2 Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, decided January 6, 1913; C., B. & Q. Ry. Co. v. Miller, 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed. 323, decided January 6, 1913; C., R. I. & P. Ry. Co. v. Hardwick Farmers' Elevator Co., 226 U. S. 426, 33 Sup. Ct. 174, 57 L. Ed. 284, 46 L. R. A. (N. S.) 203, decided January 6, 1913; also, United States v. Union Stock Yards & Transit Co., and Chicago Junction Railway Co. v. United States, 226 U. S. 286, 33 Sup. Ct. 83, 57 L. Ed. 226, decided January 15, 1913.

Appellant likewise contends by its several propositions that, where a railroad company has already provided ample facilities for the adequate accommodation of the traveling public, such as may be proper and reasonable at any given point, and operates, in addition thereto, through trains for the accommodation of interstate passengers, an act of the state Legislature or Railroad Commission affecting the operation of said through trains is a burden upon and an interference with interstate commerce, and this contention seems to be supported by the authorities. See Herndon v. C., R. I. & P. Ry. Co., 218 U. S. 135, 30 Sup. Ct. 633, 54 L. Ed. 970; Atlantic Coast Line v. Wharton, 207 U. S. 328, 28 Sup. Ct. 121, 52 L. Ed. 230; Mississippi Railroad Commission v. Illinois Central R. R., 203 U. S. 335, 27 Sup. Ct. 90, 51 L. Ed. 209; Big 4 v. Illinois, 177 U. S. 514, 20 Sup. Ct. 722, 44 L. Ed. 868; L. S. & M. S. Railway Co. v. Ohio, 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed. 702; Gladson v. Minnesota, 166 U. S. 427, 17 Sup. Ct. 627, 41 L. Ed. 1064; Illinois Central R. R. Co. v. Illinois, 163 U. S. 142, 16 Sup. Ct. 1096, 41 L. Ed. 107.

The uncontradicted evidence, we think, amply sustains appellant's contention that during the period in controversy it furnished ample facilities, independent of said through trains, for the accommodation of its passenger traffic on its lines south of Denison, in that it had three passenger trains each way daily between Denison and Hillsboro, via Dallas and Ft. Worth, three passenger trains each way daily between Hillsboro and Granger, and two passenger trains each way daily between Granger and San Antonio, in addition to said trains Nos. 9 and 209, or a total of four trains daily each way between Denison and Granger, and three trains each way daily between Granger and San Antonio; two of the additional trains between Denison and Granger stopping each way daily at all regular stations, and one of them between Granger and San Antonio.

The chief complaint on the part of appellee was that appellant failed to run said trains Nos. 9 and 209 out of Denison on schedule time. It will be observed that the order of the commission only requires railroad companies operating in this state to

start their passenger trains from the points of origin in accordance with their advertised schedules. Can it be said that Denison was the point of origin of said trains above referred to? We think not. These trains, it clearly appears from the evidence, were made up and started from Kansas City and St. Louis, respectively, and thence operated and delivered to appellant by said Missouri, Kansas & Texas Railway Company at Denison, from which point appellant forwarded them, as through trains, under contract, over its lines, so that we think it must be regarded as one continuous train, with its point of origin at Kansas City and St. Louis, and that appellant was merely forwarding same upon its arrival at Denison, in accordance with and by virtue of its contract, and that the failure of said trains to arrive and depart from Denison in accordance with schedule time was not a violation either of the letter or spirit of said order No. 18.

These holdings render it, we think, unnecessary to discuss the various other assignments presented in appellant's brief.

Believing, as we do, that the findings of the court to the effect that appellant had failed to comply with the order of the commission, as set forth in circular No. 18, cannot be sustained, for the reasons heretofore set forth, and that appellant is not subject to the penalty imposed upon it, because at the time of the alleged violations of said order it was engaged in interstate commerce, which is not the subject of regulation by said commission, it becomes our duty to reverse and render the judgment of the trial court in favor of appellant, which is accordingly done.

Reversed and rendered.

### On Motion for Rehearing.

A very interesting, able, and elaborate motion for rehearing, embracing all the questions involved in this appeal, supported and enriched by numerous authorities evincing great industry and research, has been filed by the Attorney General and his assistant in behalf of the state, urging that the court erred in its original opinion reversing this case.

[1] Among other reasons so assigned is that the court erred in holding that the order of the commission discussed in the original opinion was void, and not enforceable, because the trains in question originated in St. Louis and Kansas City, and not at Denison, Tex., and hence were instrumentalities of interstate commerce, and could not be regulated and controlled by the Railroad Commission of Texas. After a careful consideration of the matter, we are impressed with the correctness of appellee's contention. It is true that original train No. 9 was made up of two separate and distinct trains, one operated out of St. Louis and the other out of Kansas City by the Missouri, Kansas & Texas Railway Company to Parsons, Kan., where they were consolidated and run to

Denison, Tex., and delivered by said company to appellant; yet at this point the control and authority of the first company ceased, and, in a sense, the identity of the train was lost, and the control of the latter company commenced, because here parts of said train, with other equipment added, were operated by appellant with separate and distinct crews and engines to Hillsboro, Tex., one as No. 9, via Dallas to said point, and the other as No. 209, via Ft. Worth, where some of the cars composing the train were dropped out. At Hillsboro they were reunited and operated to Granger as No. 9, where they were again divided, and thereafter operated by appellant as separate and distinct trains; one part thereof going to Houston, and the other to San Antonio, via Austin. They were advertised and known as appellant's trains, and were scheduled by it each to leave Denison daily at 6:25 a. m. For which reasons we think, so far as appellant is concerned, said trains Nos. 9 and 209 must be regarded as originating at Denison, Tex. Besides this, under the Constitution and laws of this state, Denison must be regarded as the beginning or starting point of said trains. Appellant had no right to operate its trains beyond the state line, and therefore trains received at the line and operated by it through the state must be regarded as commencing at such point. See Railroad Commission v. C., R. I. & G. Ry. Co., 102 Tex. 397, 117 S. W. 794. Section 1, art. 10, of the Constitution of this state provides that:

"Any railroad corporation or association, organized under the law for the purpose, shall have the right to construct and operate a railroad between any points within this state, and to connect at the state line with railroads of other states."

The statutes under which appellant is incorporated only authorized it to operate between named points within this state. See R. S. 1911, art. 6408. In Railroad Commission v. C., R. I. & G. Ry. Co., supra, it is said:

"The state line is, in law and in fact, one terminus of the line of a railroad intersecting it constructed by a Texas corporation, because its powers cease at that line."

It is true, as contended by appellant, that such trains were operated under a contract between it and the Missouri, Kansas & Texas Railway Company, whereby it was required to receive original train No. 9 from said last-named company at the state line and operate it over its lines of railway to San Antonio, its point of destination in Texas, in consideration that the Missouri, Kansas & Texas Railway Company would likewise receive from appellant trains Nos. 10 and 210 at such point and operate them over its respective lines to a named destination beyond the state; by reason of which it is, in effect, contended by appellant that, notwithstanding the fact that it was operated as two distinct trains, known as 9 and 209, south from Denison, it should be regarded as originating in

Kansas City and St. Louis, instead of at Denison, and thence operated jointly by said two companies as a through train to its point of destination, constituting it a through train," and thereby relieving it from the control of the Railroad Commission. Even though it was being operated under and by virtue of said contract, still we are not disposed to think that this would have the effect to change the beginning or initial point, so far as appellant is concerned, to a point outside of the state of Texas; especially in view of the fact that the law, as we have seen, does not permit appellant to extend its lines beyond the state, but confines its operation to points within the same.

We therefore hold that such train must be regarded as having originated at Denison, Tex., where appellant took charge of it, operating it as separate and distinct trains from said point to destination over its lines in accordance with its contract. This view renders it unnecessary for us to consider and pass upon the many other interesting questions presented in the briefs of the respective parties relating to the right of appellant to operate said trains under the Interstate Commerce Law independent of state control, because, this being an intrastate transaction, as we have held it is, appellant in the operation and management of its trains must be held subject to the control of the Railroad Commission.

[2] Notwithstanding the order was passed in 1907, and the violations are charged to have occurred in 1908, yet we think it is not necessary, as appellant contends, that it should first have been cited by the commission to show cause why it had failed to comply therewith before suit could be instituted to enforce such order. It was a general order, applying to all roads of the state falling within its purview, and hence could be enforced by the courts in the first instance.

[3] Nor do we think there is any merit in appellant's further contention to the effect that the court erred in assessing the penalty for more than one violation. This was not a continuous offense. Each violation is by the statute made an offense, and punishable as such; hence the trial court did not err in overruling appellant's contention in this respect. See Baltimore & Ohio S. W. R. R. Co. v. United States, 220 U. S. 94, 31 Sup. Ct. 368, 55 L. Ed. 384; also, State v. Wisconsin Central Ry. Co., 133 Wis. 478, 113 N. W. 952, 14 Ann. Cas. 1061.

In the first case referred to it was held that, where there were different shipments of cattle under the 28-hour law, which required that they should not be carried for a longer period than 28 hours without being unloaded for feed and water, a separate punishment might be imposed for each shipment. If, however, a number of shipments were made at the same time and place, therefore requir-

ing unloading and watering at the same time to comply with this law, then, and in that event, but one punishment could be imposed.

In the last case cited, where the law limited the speed of trains in cities and villages and imposed a penalty "for each and every" violation, it was held that this would authorize a recovery of cumulative penalties in one action where several violations are shown.

The statute in the present case imposes a penalty for every act of violation thereof. See article 6672, R. S. 1911. Hence the court was within the law in imposing a penalty for each violation as shown by the evidence.

Believing that we erred, for the reasons indicated, in reversing and remanding the case, the motion for rehearing is granted, and the order of reversal heretofore made is set aside, and the judgment of the court below is in all respects affirmed.

Motion granted. Judgment affirmed.