Case 12.—PROCEEDING BY MANDAMUS BY THE COMMON-WEALTH AGAINST THE LOUISVILLE & NASHVILLE R. R. CO., &c., TO COMPEL IT TO FURNISH ADDITIONAL FACILITES ON ITS ROAD FOR FREIGHT AND PASSEN-GERS.—March 9.

## Commonwealth v. Louisville and Nashville Railroad Company, &c.

| 120 | 91 |
| f130 | 740 |
| f133 | 159 |
| 133 | 160 |
| f133 | 176 |

Appeal from Shelby Circuit Court.

WILLIAM CARROLL, Circuit Judge.

From a judgment dismissing the petition the plaintiff appeals.   Reversed.

Railroads—Insufficient Traffic Facilities—Power of Courts to En-force—Leasing Roads to Another Company—Effect—Daily Trains—Public Duties—Escaping Public Duty.

1. Railroads—Insufficient Traffic Facilities—Power of Courts to En-force—It is shown by this record that the Louisville & Nash-ville Railroad Company owns and operates a line of railroad from Louisville to Lexington, a part of which runs through Shelby county, from Anchorage to Christiansburg, a distance of 27.60 miles, one of the most prosperous, fertile and thickly settled portions of the State; only 19.10 miles of this distance is operated for local public traffic, the remaining 8½ miles be-

ing entirely without such accommodation; that the public along said line has applied to said company for such local accommodation for its traffic, both passenger and freight, which has been refused, and that the railroad commission of this State, upon proper application to it, has directed and ordered that additional facilities be afforded to the public, which have also been refused and ignored by said company. In an action by the Commonwealth of Kentucky v. Louisville & Nashville Railroad Company to compel it to grant such additional facilities, Held —that the citizens of Shelbyville and Christiansburg, and those of the communities contiguous thereto, are entitled to better facilities for the transportation of passengers and freight between the places named than have been afforded them, and that the powers of the court were properly invoked in their behalf.

2. Leasing Road to Another Company—Effect—The fact that the appellee, L. & N. R. R. Co., has made a contract with the Chesapeake & Ohio Railroad Company, leasing its road to said company under certain restrictions and privileges as to running of trains over that part of the line in controversy, does not relieve it from affording the facilities necessary for the needs of the public.

3. Daily Trains—The fact that the Chesapeake & Ohio Railroad Company, as lessee of the Louisville & Nashville Railroad, runs a train daily over said line of railroad, does not meet the requirements of the law and of the public, when such trains do not stop at the way stations or afford local accommodations. It is to accommodate the entire public that both through and local trains are operated by railroad companies.

4. Public Duties—Jurisdiction of Courts—Railroads are creatures of the law, invested with certain powers, to promote the public interest, for which reason they may be required to conduct their affairs in furtherance of the public objects of their creation, and it is because of this public character that courts assume jurisdiction to enforce the public duties required of them.

5. Escaping Public Duty—A railroad company can not be permitted to escape the performance of any duty or obligation imposed by its charter or by the general laws of the State by transferring its road, or any part thereof, to a lessee, or upon the ground that its own operation thereof will occasion loss to it.

R. F. PEAK, attorney for appellant.

C. J. PRATT, Atty. Gen'l, and McKENZIE R. TODD, of Counsel.

1. Practically the only defense offered by the Louisville & Nashville Railroad Company, is that the local traffic from and between

Commonwealth v. Louisville & Nashville Railroad Company, &c.

Christiansburg and Shelbyville is not sufficient to justify the run-
ning of local trains; and under this contract with the Chesapeake
& Ohio Railway Company it has no right to operate local trains.

2. We contend that the right granted by the Legislature to rail-
road corporations of the right to condemn private property over
which to construct and operate railroads, carries with it the duty
to so manage and operate railroads as to accommodate the travel-
ling and shipping public along its line, and that nothing, and es-
pecially any contract entered into, that will hinder the railroad
from performing its duty to the public can deprive the public of
its right to the use of the highway thus constructed upon the
payment of reasonable and just rates.

3. Section 792 of the Ky. Stat. provides when two railroad com-
panies use the same line of railroad in the operation of their
trains, they shall afford along said railroad reasonable and proper
facilities for the receiving, forwarding and delivering of passengers
and property without discrimination in rates and charges, and all
contracts made between such corporations in so far as same shall
conflict with the provisions of this section are hereby declared to
be null and void and contrary to public policy, &c.

4. Acting upon the opinion of this court in a former suit, that
the matter belonged to the Railroad Commission, they were con-
vened and held that it was the manifest duty of this appellee to
operate trains over that road, but appellee refused and failed to
comply with the findings of the Railroad Commissioners, and this
suit was filed.

5. The only remedy left to the public to procure and protect
their rights, and to compel this corporation to perform its duty to
the public, is a writ of mandamus, which the public has resorted
to in this action.  This remedy and relief has been denied it by
the lower court, and it now appeals to this court for these rights
and privileges, which under the law it is entitled to.

## AUTHORITIES CITED.

Section 772a, Ky. Stat.; Commonwealth v. L. & N. R. R. Co., 23
Ky. Law Rep., 1986; Section 792, Ky. Stat.; Washington, Alex-
andria & Lexington R. R. v. Brown, 17 Wallace, 445; Smyth v.
Ames, 169 U. S., 545; State of Illinois v. St. Louis, Alton & Terre
Haute R. R. Co., 35 L. R. A., 656; Know County v. Aspinwall, 16
U. S., 735; Morris L. Gladson v. State of Minnesota, 166 U. S., 425;
Lake Shore & Michigan Southern Ry. Co. v. State of Ohio, 173 U.
S., 285.

WILLIS & TODD, attorneys for appellee.

B. D. WARFIELD, of counsel.

### POINTS.

1. Because it is an admitted fact that appellee is operating its trains over the line of railroad in controversy in full compliance with the requirement of Sec. 772a.

2. If there be a contract between appellant and appellee, appellee is complying exactly with the terms which appellant has defined would be accepted as a compliance with its contract.

3. To grant the prayer of the petition, and require appellee to operate additional trains between Shelbyville and Christiansburg, would result in a great and continuous loss to it without material benefit to any number of persons, which a court of equity has never done and will not do.

### AUTHORITIES CITED.

Ky. Stat., Sec. 772a; Commonwealth v. L. & N. R. R. Co., 23 Ky. Law Rep., 1986; Elliott on Railroads, Sec. 642; Northern Pacific R. R. Co. v. Washington Territory, 142 U. S., 492; Elliott on Railroads, sec. 694; Cleason v. State of Minnesota, 166 U. S., 427; Lake Shore & M. R. R. Co. v. Ohio, 173 U. S., 285; Tiedman on State & Federal Control of Persons and Property, 104; Broaddus v. Broaddus, 10 Bush, 299; Jack v. Willaims, &c., State, by, &c. v. Jack, &c., 113 Fed. Rep., 823; Smith v. Ames, 169 U. S., 467; Road Company v. Sanford, 164 U. S., 578; Chicago, Minneapolis & St. Paul R. R. Co. v. Minnesota, 134 U. S., 418; Railroad Company v. Smith, 173 U. S., 684; Morawetz Private Corporations, Sec. 1119; Coe v. Columbus, P. & I. R. R. Co. (Ohio), 75 Am. Rep., 524.

OPINION BY JUDGE SETTLE.—Reversing.

This action was instituted in the Shelby circuit court by the appellant, Commonwealth of Kentucky, against the appellee, Louisville & Nashville Railroad Company, and the Chesapeake & Ohio Railway Company, to compel them, through the mandatory process of the court, to furnish for the use of the public greater facilities for the transportation of passengers and freight over the line of railroad operated by them in and through Shelby county, particularly between Shelbyville and Christiansburg. It appears from the averments of the petition that the appellee, Louisville & Nashville Railroad Company, owns and operates a

line of railroad running from Louisville via Frankfort to Lexington and other points east thereof, which originally had its terminus at the latter city, and was formerly known as the Louisville, Cincinnati & Lexington Railroad. This railroad passes through a section of Shelby county, though at a distance of several miles from Shelbyville, its county seat, and it has stations or depots at Pleasureville, Christiansburg, Bagdad, and Hattan; all in Shelby county. Some years ago the appellee, Louisville & Nashville Railroad Company, also acquired the ownership, and control of a line of railroad from Shelbyville to Anchorage, where it connects with its main line from Louisville to Lexington. In 1895 the appellee, Louisville & Nashville Railroad Company, constructed a railroad from Shelbyville to Christiansburg, a distance of 8 1-3 miles, connecting at the latter place with its main line from Louisville to Lexington. By the building of the railroad between Shelbyville and Christiansburg appellee became the owner of a line of railroad running entirely through Shelby county, one end of which connected with its main line at Christiansburg and the other at Anchorage. Upon the completion of the road between Shelbyville and Christiansburg, it was leased to the Chesapeake & Ohio Railway Company for its exclusive use, and, in addition, the latter company also acquired the right to run its trains over that part of the railroad owned by the appellee, Louisville & Nashville Railroad Company, connecting Shelbyville with its main line at Anchorage. By this arrangement all the trains, both passenger and freight, of the Chesapeake & Ohio Railway Company that had theretofore run from Lexington to Louisville altogether upon and over the old or main line of the Louisville & Nashville Railroad Company between those points, were enabled to leave the main

line at Christiansburg and reconnect with it at An-
chorage, thereby relieving, in some sort, the conges-
tion upon the main line, and securing a lessening of
the distance between Christiansburg and Louisville
of about 12 miles, which was and is a matter of con-
siderable importance to the Chesapeake & Ohio Rail-
way Company in operating its fast through passenger
and freight trains and maintaining proper connec-
tions.   The contract between the railroad companies
prohibits the Chesapeake & Ohio Railway Company
from doing any local passenger or freight business
from points between Lexington and Louisville; that
is to say, by the terms of the contract the Chesapeake
& Ohio Railway Company acquired the right to run
its through trains only over the road in question, and
all business originating upon the lines between Lex-
ington and Louisville, not including either of those
points to the other, was to belong to the Louisville &
Nashville Railroad Company exclusively, except pas-
senger fares from points where the Chesapeake &
Ohio trains might be obliged to stop on account of
railway crossings, train orders, water, etc., in which
event that company was to receive 25 per cent. of such
fares and the Louisville & Nashville Railroad Com-
pany 75 per cent. thereof.

It further appears that, though the Louisville &
Nashville Railroad Company continued to operate,
and is yet operating daily, its trains, both passenger
and freight, the former twice and the latter at least
once each way between Shelbyville and Louisville, it
has never run its trains, either passenger or freight,
upon or over that part of its railroad extending from
Shelbyville to Christiansburg; and though the Chesa-
peake & Ohio Railway Company daily runs its through
passenger and freight trains over appellee's railroad
in Shelby county in going to and from Louisville, it

will not sell tickets or carry passengers or freight from Shelbyville to Christiansburg, or from Christiansburg to Shelbyville; that one of its passenger trains which passes Shelbyville at 10 o'clock a. m. each day, going west, will carry passengers from Bagdad to Shelbyville, but refuses to sell them tickets or accept fares from Bagdad to Louisville, or any other point except Shelbyville, and its train arriving at Shelbyville from Louisville about 7 p. m. each day will carry passengers from Shelbyville to Bagdad, but will not sell tickets to or carry passengers from Shelbyville to any other station in Shelby county on its evening train.

It is further averred in the petition that appellant, by proper proceeding and due notice to the two railroad companies, carried before the Board of Railroad Commissioners of the State its complaint set forth in the petition, and, after receiving the evidence and duly considering the questions of law and fact presented, they decided that the public has a right to the use of local passenger and freight train service over the appellee's railroad from Shelbyville to Christiansburg, as demanded; that a copy of the findings of the Railroad Commissioners was delivered to each of the railroad companies, but that, notwithstanding the action of the Railroad Commissioners, they failed and refused to comply with its findings and order, and have not yet done so.

A demurrer was filed to the petition by each of the railroad companies. The court overruled the demurrer of appellee, Louisville & Nashville Railroad Company, but sustained that of the Chesapeake & Ohio Railway Company, and the petition as to it was dismissed. The judgment was excepted to by appellant, and an appeal prayed; but, as no appeal has been

taken therefrom, that judgment is not before us for review.

After its demurrer to the petition was overruled, the appellee, Louisville & Nashville Railroad Company, filed answer, in which it admitted its failure and refusal to operate either passenger or freight trains on its line of railroad between Shelbyville and Christiansburg, but denied that either of these places or the public elsewhere· were needing or asking for additional railroad facilities between those points. As a further defense it was alleged in the answer that the railroad between those points was constructed by appellee solely for the use of the Chesapeake &·Ohio Railway Company to enable it to make fast time between the east and west, and without purpose on appellee's part, or expectation upon the part of the public, that it would be used for the transportation of local passengers or freight; that the road is being used by the Chesapeake & Ohio Railway Company exclusively for the running of its fast through passenger and freight trains, and that its use by appellee's trains for the transportation of passengers or freight would cause a violation of its contract with the Chesapeake & Ohio Railway Company; that the business or traffic between Shelbyville and Christiansburg would not justify the operating of either passenger or freight trains by appellee from one to the other, and that, if compelled to do so, the expense thereof would entail upon appellee a heavy and continuous loss. It is also averred in the answer that the Statutes of Kentucky only require a railroad company ''to run at least one passenger train each way on every day of the year, Sundays excepted, over said line;'' that the Chesapeake & Ohio Railway Company is running one passenger train each way on every day of the year over the line of railroad in question, and has done so ever since the

right to operate its trains thereon was obtained of appellee, which relieved the latter of the duty to run additional trains over the same road, and is besides a literal compliance with the law. The reply filed by appellant contained a traverse of the affirmative matter of the answer as amended, thereby completing the issues, and in the trial which followed the court rendered judgment dismissing the petition, of which appellant complains.

Section 772a, Ky. St., 1903, provides: "That all corporations, companies, persons or associations owning and operating a railroad line in this Commonwealth, or any branch of any railroad in this Commonwealth, the length of which exceeds five miles, shall be required and they are hereby directed to run at least one passenger train each way on every day of the year, Sundays excepted, over said line." * * * Section 792 provides: "When two railroad companies use the same line of roadway in the operation of their trains, they shall afford along such roadway reasonable and proper facilities for the receiving, forwarding and delivering of passengers and property without discrimination in their rates and charges. All contracts made between such companies, in so far as the same shall conflict with the provisions of this section, are hereby declared to be null and void and contrary to public policy. The Railroad Commissioners shall enforce the provisions of this section by imposing the same penalties for violation thereof as is provided in section 220 of this act for violation of said section." It is disclosed by the record that some time before the institution of this action another was brought in the name of the Commonwealth under section 772a, supra, to recover of the Chesapeake & Ohio Railway Company the penalties therein provided for their alleged failure to furnish adequate passenger ac-

commodations to the local traveling public upon and over their line of railroad between Shelbyville and Christiansburg. In that action the following instruction seems to have been given by the trial court to the jury: "The jury are instructed that the failure to stop trains at Christiansburg, or sell tickets, or transport passengers thereto and therefrom, over said Shelby cut off, is immaterial, as that failure can not be considered in this action, but is a matter within the control of the Railroad Commissioners of Kentucky." Under this instruction the jury returned a verdict for the defendants, and judgment was entered in accordance therewith, dismissing the petition. Upon appeal to this court the instruction referred to was approved and the judgment affirmed, but in the opinion the court said: "Some reference is made to the power of the Railroad Commission in regard to the operation of railroads. It is also argued that under the law railroads, being common carriers, are bound to furnish reasonable facilities for passengers and traffic thereon. But neither of these questions is before us for decision, and we expressly decline to give any opinion thereon. It is, however, clear to us that the appellees have not violated the letter of the statute aforesaid, and it therefore follows that the judgment appealed from must be and is affirmed." Commonwealth v. L. & N. R. R. Co., 112 Ky., 783, 66 S. W., 753, 23 Ky. Law Rep., 1986. Following the decision of the case, supra, the complaint set forth by the petition in the case at bar was presented by petition from the judge of the Shelby circuit court and others to the Railroad Commissioners, urging them to take such action in the premises as would give the public the relief sought. Thereupon the commissioners, after due notice to the two railroad companies concerned, and considering the evidence offered by all the parties, rendered in writing

their finding and opinion, from which we quote the following: "Here we have an improved modern public highway, a continuous line of railroad running from Anchorage to Christiansburg, 27.60 miles in length, running through one of the most prosperous, fertile and thickly settled portions of the State, and only 19.10 miles of which is operated for local public traffic. The remaining 8½ miles are entirely without such accommodations. In the opinion of the commission the relative rights and duties of these parties are plain. The public has the right to the use of the local passenger and freight train service over this line from Shelbyville to Christiansburg, and it is the duty of the L. & N. (Louisville and Nashville Railroad Company) to either furnish this accommodation by the operation of its own trains, or to so reform its contract with the Chesapeake & Ohio Railway Company that the latter company may perform this service. * * * The commission does hereby refuse to exonerate said company from the performance of its said duties, and from the requirements of section 772a, 792 and 820, Ky. St." A copy of the opinion and finding of the Railroad Commissioners was delivered to each of the railroad companies concerned, and a copy also furnished the judge of the Shelby circuit court, but, as no steps were taken by either company to comply with the findings of the commissioners, this action was brought to enforce their compliance therewith.

An examination of the record leads us to the conclusion that the findings of fact reported by the Railroad Commissioners are supported by the evidence introduced before the trial court. It is an admitted fact that only the trains of the Chesapeake & Ohio Railway Company are operated over that part of appellee's road extending from Shelbyville to Christians-

burg. It is likewise admitted that that company will not sell tickets or carry passengers or freight from Shelbyville to Christiansburg or from the latter place to Shelbyville, yet there is both a railroad depot and telegraph office at Christiansburg as at Shelbyville. Although this part of appellee's road runs through the most fertile section of Shelby county, where great quantities of wheat, corn, tobacco and hemp are grown, and a large number of horses, mules and shipping cattle are produced, if a resident of that community desires to ship his stock or produce to Lexington, Cincinnati, or further east upon the trains of the Chesapeake & Ohio Railway Company, he must either haul it to some station on the Louisville & Lexington Division, or haul it to Shelbyville, and ship it to Louisville, and there rebill it over the Chesapeake & Ohio, by which means it will return upon the cars of that company through Shelby county, and by his home, on its way east; all of which entails upon the shipper unreasonable and unnecessary delay and cost. We are of opinion that the citizens of Shelbyville and Christiansburg, and those of the communities contiguous to each, are entitled to better facilities for the transportation of passengers and freight between the two places named than have been afforded them, and that the powers of the court were properly invoked in their behalf.

There is no merit in the contention of the appellee that its contract with the Chesapeake & Ohio Railway Company prevents it from affording the public the railroad facilities demanded. Section 792 of the statute, which requires two railroad companies using the same line of railway to afford reasonable facilities for passenger and freight traffic, expressly declares that "all contracts made between such companies, in so far as the same shall conflict with the provisions of

this section, are hereby declared to be null and void, and contrary to public policy." Under the letter of the statute, therefore, appellee had no power to make such a contract as would relieve it of the performance of duties it owed to the public as a common carrier. In Washington A. & G. R. R. v. Brown, 17 Wall, 445, 21 L. Ed., 675, the Supreme Court of the United States said: "It is the accepted doctrine in this country that a railroad corporation can not escape the performance of any duty or obligation imposed by its charter or the general laws of the State by a voluntary surrender of its road into the hands of lessees. The operation of its road by the lessee does not change the relation of the original company to the public." Equally untenable is appellee's contention that the running of a train daily each way by the Chesapeake & Ohio Railway Company is a sufficient compliance with the law. Of what benefit to local passengers and traffic would be the running of daily trains if they never stop at way stations or afford local accommodation? It is to accommodate the entire public that both through and local trains are operated by railroad companies. "A railroad company is a public highway, and none the less so because conducted and maintained through the agencies of a corporation deriving its existence and powers from the State. Such corporation was created for a public purpose, it performs functions of the State, it has authority to exercise the right of eminent domain and to charge tolls, though given primarily for the benefit of the public good. * * * It can not be assumed that any railroad corporation accepting franchise rights and privileges at the hands of the public ever supposed that it acquired, or it was intended to grant to it, the power to construct and maintain a public highway simply for its benefit." Smith v. Ames, 169 U. S., 545, 18 Sup. Ct., 418, 42 L.

Ed., 819. Railroads are creatures of the law, invested with certain powers to promote the public interest, for which reason they may be required to conduct their affairs in furtherance of the public objects of their creation; and it is because of this public character that courts assume jurisdiction to enforce the public duties required of them. The following excellent statement of the law on this subject may be found in Gladson v. State of Minnesota, 166 U. S., 429, 17 Sup. Ct., 628, 41 L. Ed., 1064: ''The princilpes of law which govern this case are 'familiar, and have often been affirmed by this court. A railroad corporation created by a State is for all purposes of local government a domestic corporation, and its railroad within the State is a matter of domestic concern, even when its road connects, as most railroads do, with railroads in other States; and the State which created the corporation may make all needful regulations of a police character for the government of the corporation while operating its road in that jurisdiction. It may prescribe the location and the plans of construction of the road, the rate of speed at which trains shall run, and the places at which they shall stop, and may make any other reasonable regulation for their management in order to secure the objects of the corporation and the safety, good order, convenience, and comfort of the passengers and of the public. All such regulations are strictly within the police power of the State.''   *   *   *   Lake Shore & M. S. Ry. Co. v. State of Ohio, 173 U. S., 285, 19 Sup. Ct., 465, 43 L. Ed., 702. The power to regulate the relative rights and duties of the railroads and the public in this State has, in large measure, been delegated by the Legislature to the Railroad Commission, and the provisions of the statute under which the commissioners acted in this case being reasonable, we can but

conclude from the facts disclosed by the record that their determination of the questions presented by the complaint upon which they acted was proper, and for the convenience of the public.   Therefore the recommendation made by them should have been obeyed by the railroad companies, but, they having failed to do so, appellant could but resort to the courts for relief.

It is strongly insisted for appellee that the income that would be derived from operating trains for local passenger and freight traffic on that part of the road where it does not now afford such accommodation, would be insufficient to maintain such accommodation. On this point there is some conflict of evidence, but it was made to appear on the hearing before the Railroad Commissioners that appellee's net income upon its entire railroad system in Kentucky is about $4,000,000, per annum, and on the Shelbyville branch from Shelbyville to Anchorage $31,000 per annum.  We do not find these facts successfully contradicted in the record.   But, in any event, appellee can not be permitted to escape the performance of any duty or obligation imposed by its charter or the general laws of the State by transferring its road, or any part thereof, to a lessee, or upon the ground that its own operation thereof will occasion loss to it.

Being of the opinion that the appellant is entitled to a mandatory injunction to compel appellee to furnish the facilities for local passenger and freight traffic asked in the petition, the judgment is reversed, and cause remanded for further proceedings consistent with the opinion.

Petition for rehearing by appellee overruled.