## Louisville & Nashville Railroad Company v. Commonwealth.

(Decided December 17, 1920.)

### Appeal from Warren Circuit Court.

1. Railroads—Railroad Commission—Powers of.—The railroad commission being a creation of the statute can exercise no powers except those conferred by the statute.

2. Railroads—Stations—Powers of Court in Respect to.—A court has no independent jurisdiction to order a railroad company to build or repair a station as the legislature has conferred on the railroad commission powers in respect to stations, and when power in relation to specific matters has been given to an administrative body this body must take appropriate action concerning the matter delegated to it before the courts have jurisdiction to act.

3. Railroads—Power of Court in Respect to Stations and Other Matters Concerning Railroads.—A court may have independent jurisdiction to compel a railroad company to do the things needed to enable it to perform the purposes for which it was created when the authority to require it to do these things has not been conferred by the legislature on some administrative body.

4. Railroads—Power of Railroad Commission in Respect to Stations.—Section 772 of the Kentucky Statutes gives the railroad commission power to order stations "burned or otherwise destroyed" or that "become unfit for the accommodation of the public" to be rebuilt or repaired as the case may be.

5. Railroads—Power of Railroad Commission in Respect to Stations.—The railroad commission has no power to order a new station to take the place of an existing one. It can only order it so repaired as to make it fit for the public accommodation. But when

a station has been "burned or otherwise destroyed" it may order a new station built.

6.  Railroads—Stations—"Burned or Otherwise Destroyed"—Definition of.—A station is "burned or otherwise destroyed" when from fire or other cause it has become totally unfit for use.

7.  Railroads—Penalties for Failing to Comply with Orders of Commission.—If a railroad company fails to comply with proper orders of the railroad commission in respect to stations it may be punished under section 793 of the Kentucky Statutes.

8.  Railroads—Railroad Commission—Powers Under Section 830 of Statute.—Section 830 of the Kentucky Statutes gives the railroad commission no power to enforce any orders or directions it may make under this section. It can only lay the facts before the attorney general and report to the legislature what it has done.

BENJAMIN D. WARFIELD, H. L. STONE, E. S. JOUETT, W. A. NORTHCUTT, SIMS, RODES & SIMS and J. H. McCHORD for appellant.

CHARLES I. DAWSON, Attorney General, M. M. LOGAN, T. W. & R. C. P. THOMAS and B. W. BRADBURN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Reversing.

This litigation is the result of a controversy between the Bowling Green Business Men's Protective Association, acting on behalf of the citizens of the city of Bowling Green, and the Louisville and Nashville Railroad Company, and concerns the erection of a new passenger station at Bowling Green.

It had its origin in this way. In 1912 the Business Men's Protective Association filed with the Kentucky Railroad Commission a complaint setting forth that the passenger station facilities at Bowling Green were inadequate. Thereafter evidence was taken on the subject of the controversy, and on May 9, 1913, the following order was entered by the railroad commission:

"The parties hereto appeared by counsel and by consent it is ordered and adjudged by the commission that the present passenger station facilities at Bowling Green, Ky., are inadequate, insufficient and unsuitable for the purposes for which intended but that the defendant does not waive its right to question the power and jurisdiction of the commission to order a new station or changes in the present station. Thereupon the defendant made it appear to the commission that it contemplates revising its main line of railroad from Nash-

ville, Tenn., to a point north of Bowling Green and that said improvement involved the construction of a new route so as to touch or run near Bowling Green southeast thereof, upon or in proximity to the survey heretofore made, and also involved the change of the passenger station at Bowling Green from its present location to some point on said proposed new line, and it urged said facts as a reason why it should not at this time construct a new station at Bowling Green.

"Whereupon it is by consent ordered that within three years from entry of this order defendant shall commence in good faith the location and construction of a new, modern, properly equipped passenger station to serve Bowling Green, Ky., or, if the proposed construction of said new line is within said three years, abandoned, then said new station is at once to be constructed at or near its present site, or elsewhere on said present line of railroad; but if ultimately located at the present site or elsewhere upon said present line of railroad it must be so located or constructed that the public will have access to same without having to cross any tracks."

At the same time and as a part of the foregoing order the following order was entered by the commission:

"Pending the construction of the new station herein contemplated the defendant agrees to maintain the present station in good condition and to make the following improvements in same:

"1.   Have the Adams Express Company vacate the station building. Convert the room formerly occupied by it into a kitchen for the restaurant, and add the present kitchen to the dining room, thus making an enlargement which will be a material improvement.

"2.   Straighten the track immediately east of and adjacent to the platform at the south end of the station so that it will be practically parallel with the track on the west of this platform. The result of this will be to widen the platform so that it will be as wide at its south end as it is at the depot building and same will then be extended all the way to Main street.

"The area of the present platform south of the station is about 2,400 sq. ft.; the area of the new one will be 4,200 sq. ft.; or an increase of 75%. This platform will be covered with a shed.

"3.   Have a septic tank installed for sewage. This was suggested by the committee as the method in use in

connection with the best buildings at Bowling Green, in view of the city having no sewerage system.

"4. Remove the stoves, some ten or twelve in number, and install a steam heating system.

"5. Provide and maintain adequate lights to keep the station sufficiently lighted.

"This cause is filed away subject to be reinstated by either party or by the commission upon ten days' notice to the parties."

The three years mentioned in the foregoing orders having expired and the railroad company not having changed its line of road at Bowling Green or taken any steps to do so and not having erected a new station or taken any action indicating its purpose to do so, the railroad commission, upon the request of the business men's association, held a meeting in June, 1916, after notice to the railroad company, for the purpose of inquiring into the failure of the company to comply with its agreement made in 1913 to erect a new station, and to enter such orders as might seem to be proper. At this meeting the commission heard other evidence on the subject of the controversy, and thereafter, on October 24, 1916, it entered, after reciting the foregoing facts, the following order:

"In view of the premises the commission feels under a duty to exercise what it conceives to be its authority under the law to require the defendant company to comply with the order heretofore entered and agreed to.

"To this end the order heretofore entered and agreed to is hereby reaffirmed and amended, and the commission finds that the evidence, and a personal inspection of the physical conditions, establish the following facts relative to the station maintained by the defendant company at Bowling Green, Kentucky, to-wit: That said station is unfit for the accommodation of the public; that the same is inadequate, insufficient and unsuitable as a passenger station to accommodate the patrons of said road and the travelling public; that the present inadequate facilities result in danger to the traveling public who are required, in leaving the train or in going to board the train, to pass in close proximity to trucks ladened with trunks, boxes and other articles of merchandise which are liable to fall from said trucks and which, if they should do so, would injure passengers or patrons of said road; that as said station is at present constructed and maintained the travelling public are unnecessar-

ily required to cross the tracks in order to reach the said station.

"Therefore, it is the order of the commission that the chairman of said commission shall send a copy of this opinion to the president of the defendant, Louisville and Nashville Railroad Company, and notify said president in writing to rebuild the station at Bowling Green, Ky., within ninety days after the receipt of such notice, and that said notice shall contain the following requirements concerning the rebuilding of said station, to-wit: That said station shall be, a new, modern and properly equipped passenger station and adequate, sufficient and suitable for the purpose for which it is intended, and that said new station shall be so located and constructed that the public will have access to same without having to cross any tracks approaching said station from the east.

"It is the further order of the commission that if the requirements herein demanded cannot be reasonably complied with in the time prescribed, to-wit: ninety days, that additional time shall be granted from time to time as the necessity of the occasion is made manifest, provided that the defendant company in good faith, and within a reasonable length of time manifests its determination and willingness to carry out the provisions of this order."

Thereafter, and in March, 1917, the Commonwealth of Kentucky, suing for the use and benefit of the Bowling Green Business Men's Protective Association and the people of Bowling Green, brought this suit in equity in the Warren circuit court against the railroad company. The petition, after setting out the facts as we have stated them, averred:

"That, as a matter of fact, the said defendant has for more than five years, and does now unlawfully maintain a station and depot at Bowling Green, Ky., which is unfit for the accommodation of the public; that the same is inadequate, insufficient and unsuitable as a passenger station to accommodate the patrons of said road and the travelling public. That the present inadequate facilities result in danger to the travelling public who are required in leaving the train, or in going to board the train, to pass in close proximity to trucks ladened with trunks, boxes nd other articles of merchandise which are liable to fall from said trucks and which, if they should do so, would injure passengers or patrons of said road;

and as said station is at present constructed and main-
tained the travelling public are unnecessarily required
to cross tracks in order to leave said station.''

The prayer of the petition was:

''For a judgment against the defendant, Louisville
& Nashville Railroad Company, and such orders as will
require and compel the defendant to obey and comply
with the order of the railroad commission duly entered
of record in the office of said commission and filed as
a part of this proceeding; and that such orders may be
entered as will require the defendant to comply with
its statutory duties under section 772, Kentucky Stat-
utes, Carroll's edition 1909; and for such other orders
as will require the defendant to rebuild the station at
Bowling Green, Ky., so that said station shall be a new,
modern and properly equipped passenger station and
adequate, sufficient and suitable for the purposes for
which it is intended and that said new station shall be
so located and so constructed that the public will have
access to same without having to cross any tracks ap-
proaching said station from the east.''

To this petition a general demurrer was filed by the
railroad company and overruled, and thereupon the
railroad company filed its answer, in which, after deny-
ing that the station at Bowling Green was inadequate or
in any respect insufficient for the use of the public,
further set up that in accordance with its agreement
made in 1913 to make certain repairs and improvements
it had at an expense of $9,000.00 completed all the re-
pairs and improvements that it undertook to make.

It further challenged the authority of the railroad
commission to require it to entirely rebuild said station
or to build a new one, and averred that it intended at
the time the agreement of 1913 was made and during the
three years thereafter to erect a new depot, but the con-
ditions produced by the war rendered it impossible that
it should make its improvements. It further set up the
fact that, pursuant to an act of Congress, the United
States government in December, 1917, took over the
management and control of all the roads in the United
States and during the time its road was in the posses-
sion of the government it was unable to make improve-
ments contemplated.

To this answer a general demurrer was sustained
and the railroad declining to plead further the Warren

circuit court in June, 1919, entered an order adjudging that:

"The defendant, Louisville & Nashville Railroad Company, shall comply with the orders of the Kentucky Railroad Commission entered on the 24th day of October, 1916, and set forth in the petition of plaintiff and shall rebuild the passenger station at Bowling Green, Ky., so that said station shall be a new, modern, and properly equipped passenger station and adequate, sufficient and suitable for the purpose for which it is intended, and that said station shall be located and so constructed that the public will have access to same without having to cross any tracks of the defendant railroad company, approaching said station from the east, and the court further orders and adjudges that defendant, Louisville & Nashville Railroad Company, shall commence the rebuilding and erection of said passenger station at Bowling Green, Ky., in accordance with the aforesaid order of the Kentucky Railroad Commission and in accordance with this judgment, within 120 days from the entry of this order, and within 90 days from the entry of this order shall submit and file with the Kentucky Railroad Commission for its examination, inspection and approval, plans and specifications for said passenger station so ordered to be erected and built, together with the estimated cost of same and shall also file in this court, if in session, and, if not in session, in the clerk's office thereof, copies of said plans and specifications and estimated cost.

"The court reserves control of this cause and the right at any time, by proper orders, to enforce compliance with this judgment and to make such future orders as may effectuate its purposes."

From this judgment the railroad company prosecutes this appeal.

At the time the case was prepared and when the judgment was rendered the railroads of the country were in the possession of the federal government, although since then they have been returned to their owners, and in the argument of the case considerable attention has been given by counsel to a discussion of the proposition that the railroad commission was without power to order a new station constructed during the period of federal control of the railroad; but in the view we have of the law controlling the case it will not be necessary to spend any time in considering this question

and it will not be further noticed. It is also insisted that the order of the railroad commission and the judgment of the court are both void for uncertainty, but as the decision of the case will turn on other points it will not be necessary to determine the sufficiency or definiteness of the order or judgment.

It will be observed that the court proceedings had their basis in the action taken and the orders made by the railroad commission, and therefore we think the decision of the case on the record before us must turn on the question whether the railroad commission under the law and facts had the power to order that a new station be erected. We say this because independently of whatever power the railroad commission may have had to order that this be done we do not think the Warren circuit court had jurisdiction to enter the judgment that it did or any judgment or order in reference to the reconstruction or rebuilding of this station.

The absence of jurisdiction on the part of the court in a state of case like this grows out of the fact that the legislature of the state has, by statutes that will be later noticed, conferred on the state railroad commission, power to take action in respect to the building and repair of railroad stations, and when power in relation to specific matters has been confided by the legislature to an administrative body created for the purpose this body must take appropriate action concerning the matters delegated to it before the courts have jurisdiction to act in respect thereto. State v. Chicago R. R. Co., 19 Neb. 476; People v. B. H. R. R. Co., 172 N. Y. 90; Com. v. L. & N. R. R. Co., 120 Ky. 91.

We do not however intend by this statement to imply that a court of competent jurisdiction would not have original power to compel in appropriate proceedings a railroad company to do such things as might be needed to enable it to perform in a reasonably satisfactory way the purposes for which it was created, when the authority to require it to do these things has not in the first instance been conferred by the legislature on some administrative body.

Illustrative cases on this subject are: Southern R. Co. v. Hatchett, 174 Ky. 463; Northern Pacific R. R. Co. v. Washington, 142 U. S. 492, 35 Law Ed. 1092; Mobile & Ohio R. R. Co. v. People, 132 Ill. 559; State v. Repollican Valley R. R. Co., 17 Neb. 647, 52 Am. Rep. 424,

See further cases cited in 17 L. R. A. (N. S.) 822; and Elliott on Railroads, vol. 1, sec. 641.

The question, however, as to the extent of the power of the courts in this respect is not involved in this case, because, as we have seen, the judgment of the court that is appealed from did no more than undertake to compel performance by the railroad company of the order made by the railroad commission.

Coming now to the power of the railroad commission in dealing with matters like the one here involved, reference must·be made to sections 772 and 830 of the Kentucky Statutes.

Section 772 reads as follows:

"Any company that has established and maintained throughout the year for five consecutive years, a passenger station at a point on its road, shall not abandon such station without the written consent of the railroad commission; and if any station used by a company is burned or otherwise destroyed, or becomes unfit for the accommodation of the public, the railroad commission shall notify, in writing, the manager or chief officer in this state of the company owning or using such station to rebuild or repair the same, as the case may be, and such company shall, within ninety days after such notice, comply with the requirements thereof; and that every company operating a railroad in this state shall provide a convenient and suitable waiting room and water closet or privies at all depots in cities and towns, and at such other stations as the railroad commission may require on its lines, and keep and maintain the same in decent order and repair."

In section 830 it is provided that:

"Whenever, in the judgment of the commission, after a personal examination of the same, it shall appear that repairs are necessary upon any railroad, or when, from complaint made or their own knowledge, they shall have reason to believe that the tracks, bridges, tunnels or other structures of any company are in an unsafe or dangerous condition, or unfit for public travel, or that any additions to, improvements, or changes in the stations or terminal facilities are needed for the convenience and security of the public, they shall give notice in writing to the company owning or operating such road of the repairs, improvements or changes they deem proper and necessary, and shall afford such corporation an opportunity to be heard in reference thereto;

and if the company shall neglect or refuse to make such repairs, improvements, or changes within a reasonable time after such hearing, if a hearing is requested by the company, and the commissioner shall believe that such improvements or changes are proper and necessary after a hearing if one is had, they shall lay the facts before the attorney general for his action and shall report the same fully to the next legislature; no examination, request, advice, or report of the commission shall, in any way, affect the duties or obligations of any company or relieve it from any liability.''

It will be observed that section 830 gives the railroad commission broad discretion, but no power, in exercising a general advisory supervision over the tracks, bridges, tunnels, stations, structures, and terminal facilities of the railroads of the state; but when the commission has investigated the conditions in respect to the matters mentioned, all it can do is to call the attention of the delinquent company to the repairs, improvements or changes that in the opinion of the commission ought to be made, and then, if the company neglects or refuses to make them, lay the facts before the attorney general of the state for his action and report to the legislature what it has done.

Under this section the legislature very carefully withheld from the commission the power to enforce through its own orders or with the aid of court proceedings any recommendations made by it. Nor does this or any other section of the statute make provision for the imposition of a penalty of any kind on a railroad company that fails or refuses to make the repairs, improvements or changes mentioned in section 830 and that are recommended by the commission.

As this section conferred no power on the commission or the courts to require a railroad company to do anything, but, on the contrary, by express words takes from the commission such power, and by fair inference excludes the courts from taking any action that would be effective in compelling railroad companies to do the things recommended by the commission, it is at once apparent that the action taken by the railroad commission and the jurisdiction and authority attempted to be exerted by the Warren circuit court were not under this section but under section 772.

Looking now to section 772 it will be noticed that it undertakes to regulate three separate conditions relat-

ing to railroad stations: (1) Prohibiting without the consent of the railroad commission the abandonment of a station that has been maintained for five years; (2) giving the commission authority to notify a railroad company when any station used by it has been destroyed or becomes unfit for the accommodation of the public and directing the railroad company to comply with the orders of the commission; (3) requiring every company to provide convenient and suitable waiting rooms and conveniences in cities and towns and at such stations as the commission may require.

The only part, however, of the section that we are concerned with in this case is that reading: "and if any station used by a company is burned or otherwise destroyed, or becomes unfit for the accommodation of the public, the railroad commission shall notify, in writing, the manager or chief officer in this state of the company owning or using such station to rebuild or repair the same, as the case may be, and such company shall within ninety days after such notice comply with the requirements thereof."

It is insisted by counsel for the complainants that this part of the section might fairly be construed to authorize the railroad commission to order a new station to be built when by reason of traffic and other conditions the existing one was not sufficient for or not suitable for the accommodation of the public; while counsel for the railroad company contend that the railroad commission has no authority to order a station to be rebuilt, or, in other words, a new station built, unless the one previously located at the place has been burned or otherwise destroyed.

This statute must be construed according to the rules applicable to other statutes, that is, so interpreted as to carry out the reasonable intention of the legislature as expressed in the statute when read and considered as a whole. When so read and considered it contemplates two conditions: the first arises when a station is "burned or otherwise destroyed," the second when a station "becomes unfit for the accommodation of the public." When the first condition exists the commission has authority to notify the company to "rebuild the station;" when the second condition exists it has authority to notify the company to "repair the same."

The word "burned" and the word "destroyed" have reference to a state of case in which the station has been

rendered wholly unfit for its intended use by fire or other cause. If a station has been "burned" and thereby totally destroyed or injured to such extent as to make it wholly unfit for use it seems clear that a new station must be built to take its place, and so if it was totally destroyed or so injured by other cause than fire as to make it wholly unfit for use a new station must be built to take its place. In either of these contingencies it is plain that the station would not be merely "unfit for the accommodation of the public" as there would be in effect no station at that place in existence. On the other hand, when a station merely becomes "unfit for the accommodation of the public" the reasonable meaning is that there is a station in existence at the place, the only fault or defect in which is caused by the fact that it has been permitted to become unfit for the accommodation of the public, and in such a state of case the statute provides that the company shall "repair the same," that is to say, remove the faults or defects that render it unfit for the accommodation of the public.

The words "burned" and "destroyed" are in common usage and when applied to buildings generally mean that the building has been made completely useless for the purpose intended. These words have no technical meaning, as may be seen by an examination of Webster's Dictionary, and Words and Phrases. The legislature uses them interchangeably and as meaning in effect the same thing, but produced by different causes.

Accordingly we do not think this statute can fairly be construed to authorize the railroad commission to order the company to rebuild a station when the former one has not been "burned or otherwise destroyed" but is only "unfit for the accommodation of the public." If the existing station is unfit for the accommodation of the public the authority of the commission is limited to notifying the company to repair the same so that it may be made fit for the accommodation of the public. Railroad stations, or depots as they are commonly called, are necessary parts of every railroad system, and the purpose of the legislature was twofold; first, to require railroad companies to have stations, and, second, to maintain them in such condition as to be fit for the public accommodation. If an existing station building is burned or otherwise destroyed, and this means completely demolished as a station building, or so nearly so as to be destroyed in the usual meaning of that word, the rail-

road commission may order a station to be built, and if the company fails to comply with this order it is subject to the penalties denounced in section 793.

Cases may and do arise in which the station building has not been burned or otherwise destroyed but at the same time is unfit for the accommodation of the public, and when this condition arises, if the railroad company fails to comply with the reasonable direction of the commission to repair the building so that it may be fit for the accommodation of the public and the railroad company fails to do this, it may be subjected to the penalties set forth in section 793.

With this understanding of the meaning and effect of this section it is apparent that the railroad commission had no power to order the company to erect a new station at Bowling Green, because the station there at the time the order was made had not been "burned or otherwise destroyed;" it was simply unfit for the accommodation of the public, and, this being so, the power of the commission was limited to ordering such repairs to be made as would put the station in such condition as would make it fit for the public accommodation. The railroad commission, however, did not do this, and in ordering a new station to be erected exceeded its authority under the statute, and the Warren circuit court likewise exceeded its jurisdiction and power in attempting to enforce this void order of the railroad commission.

We say the order of the railroad commission was void because, being a creation of the statute, its powers are confined to those fairly conferred by the statute, and when it undertakes to exceed these powers its action is not effective for any purpose; accordingly the ruling of the commission did not furnish any basis for these court proceedings. 22 Ruling Case Law 783; 10 Corpus Juris 54.

It is further pressed on our attention by counsel for the complainants that the railroad company entered into an enforceable agreement with the railroad commission to build a new station at Bowling Green, and as the judgment of the Warren circuit court only required it to do this that judgment should be affirmed.

The record shows without dispute that in 1913 by the "consent" of the railroad company it was ordered and adjudged by the commission that "the present passenger station facilities at Bowling Green, Ky., are in-

adequate, insufficient and unsuitable for the purpose for which intended." And that the railroad commission by the further "consent" of the railroad company "ordered that within three years from the entry of this order defendant (railroad company) shall commence in good faith the location and construction of a new, modern, properly equipped passenger station to serve Bowling Green, Ky." These consent orders, as will appear in other parts of the opinion, contained certain stipulations not necessary to mention, as our only purpose here is to set forth the fact that the railroad company agreed that the Bowling Green station was inadequate, insufficient and unsuitable, and further agreed that within three years, subject to the exceptions mentioned in the order of the railroad commission, it would commence in good faith the location and construction of a new, modern, properly equipped passenger station.

On the record before us we do not see our way clear to determine the meaning or effect of this consent or agreed order made between state railroad commission, the only body in the state invested with authority over the subject matter here in controversy, on the one hand, and the railroad company, a Kentucky corporation, on the other hand, because the case in the court below was not prepared with a view of having the court determine the meaning or effect of this agreement.

We may, however, with propriety say that this opinion is not to be construed as in any manner obstructing the right of the Commonwealth to institute and maintain on behalf of the citizens of Bowling Green if it desires to do so an appropriate action in the Warren circuit court for the purpose of having determined whether the agreement entered into by the railroad company is one the specific performance of which may be compelled in court proceedings.

Wherefore the judgment is reversed with directions to dismiss the petition.